UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>  Plaintiff,<br><br>V.<br><br>CONTENTS OF THE BINANCE ACCOUNT ASSOCIATED WITH USER ID 147302327 AND REGISTERED TO SANJAY LALJIBHAI AHIR<br>  Defendant,<br><br>[CLAIMANT:  SANJAY LALJIBHAI AHIR] | Civil No.<br><br><br><br><br><br><br><br><br><br>October 19, 2022 |

## VERIFIED COMPLAINT OF FORFEITURE

Now comes Plaintiff, United States of America, by and through its attorneys, Vanessa Roberts Avery, United States Attorney for the District of Connecticut, and David C. Nelson, Assistant United States Attorney, and respectfully states that:

1. This a civil *in rem* action brought to enforce the provisions of 18 U.S.C. § 981(a)(1)(A) via 18 U.S.C. § 1956(c)(7)(A) for the forfeiture of property which constitutes or is derived from proceeds traceable to an offense constituting "specified unlawful activity" (as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)), namely wire fraud in violation of 18 U.S.C. § 1343, or conspiracy to commit such offense.

2. This Court has jurisdiction over this matter by virtue of 28 U.S.C. §§ 1345 and 1355.  Venue is appropriate in the District of Connecticut by virtue of 28 U.S.C. § 1395(b).

3. The Defendant is the Contents of the Binance Account associated with user ID 147302327 and registered to SANJAY LALJIBHAI AHIR  (hereinafter "Binance Account" or "Defendant Asset").

4. The Defendant Asset is located within the jurisdiction of this Court.

**Background of Investigation**

5.      In January of 2022, the Federal Bureau of Investigation ("FBI") and the United States Secret Service ("USSS") became aware of a wire fraud scheme involving money wired to various individuals and organizations across the United States and overseas from the bank account of Y.P., a Connecticut resident.  The scheme involved the impersonation of the U.S. Department of the Treasury, the Department of Homeland Security ("DHS"), the FBI, and U.S. Citizenship and Immigration Services ("USCIS") to elicit, under fraudulent pretenses, funds relating to the verification of the victim's identity, immigration fees, and penalties.

6.      Law enforcement learned that Y.P. was fraudulently induced to believe he was a victim of identity theft. He then cooperated with two individuals that purported to work at DHS and the Treasury Department, Manish Parikh ("Parikh") and Luke Wright ("Wright"), to resolve issues stemming from Y.P.'s identity being stolen and used in various crimes.  Parikh and Wright were not, as they represented, employees or agents of the government.

7.      Y.P. sent money to various individuals and entities based on misrepresentations made by Parikh and Wright, to include additional Victims S.P. and his spouse J.P.  Victims S.P. and J.P. were similarly identified as victims of the same scheme.

8.      In or around October 2020, an individual representing himself as Jack Austin ("Austin") from the U.S. Treasury Department contacted Victim S.P. and spouse J.P. by telephone. He advised them of an apparent breach at Social Security that put S.P.'s assets at risk.  Austin was not an employee or agent of the government.

9.      Investigation revealed that Victims S.P. and J.P. were then fraudulently induced to wire large sums of money from S.P. and J.P.'s personal bank accounts to Coinbase Accounts they

2

were instructed to set up. The wire transfers ranged from approximately $7,200 to approximately $811,000. Once the funds moved from S.P. and J.P.'s personal accounts to the Coinbase Accounts, S.P. and J.P. were unable to access the funds or see if they had been transferred.

10. Between approximately October 2020 and March 2022, Victims S.P. and J.P.'s bank records indicated that they transferred an approximate total of $6,083,733.00 to their Coinbase Accounts. Based on blockchain analysis[1] performed by law enforcement, a majority of the funds were traced from the victims' accounts to the Binance account controlled by SANJAY LALJIBHAI AHIR.

11. During the October 2020 to March 2022 time period of the scheme, Victims S.P. and J.P's bank records indicate that large sums of money were also wired *into* their personal bank accounts. On each occasion, within a matter of days, the same funds were wired out of S.P. and J.P.'s accounts to their Coinbase Accounts. Law enforcement investigation and bank records provided by S.P. and J.P. showed that the funds wired into S.P. and J.P.'s personal bank accounts came from other victims of the same scheme who also erroneously believed they were victims of identity theft and that they were cooperating with a government investigation. Austin, and others, used Victim S.P. and J.P.'s bank accounts to launder other victims' money before ultimately placing them in the Binance Account.

---

[1] A "blockchain" is a decentralized, typically public, transaction ledger containing an immutable and historical record of every transaction involving the cryptocurrency. The public addresses of those engaging in cryptocurrency transactions are recorded on a blockchain, but the actual identities of the individuals or entities are not included. The process of "blockchain analysis" involves inspecting, identifying, clustering, modeling and visually representing data on a blockchain using open source and/or subscription analytical tools. Blockchain analysis allows the analyst to trace cryptocurrency transactions to the source and destination of funds, and in some instances, to identify the individual or entity involved in the transaction.

12. Law enforcement knows that government impersonation scams target people who are immigrants to the United States because these populations are not U.S. born citizens and would likely have undergone the extensive naturalization process. These scams focus on the resulting vulnerability that immigrants have from a fear of errors and/or petition denial, at each stage of the naturalization process, and consequent deportation after they have established their lives in the United States. The conspirators often use intimidation to add to a victim's fear and instruct the victim to not disclose the matter to any loved ones, government officials, or any other parties (*i.e.*, banks and shipping facilities).

13. The scams also target elderly victims because they tend to be lonely, trusting, polite, and less inclined to report fraud. Furthermore, elderly populations are often too ashamed or concerned that their relatives will lose confidence in their ability to manage their own financial affairs and thus do not, or are hesitant to, report the crime to law enforcement.

14. In this case, some of the victims were elderly and/or immigrants to the United States.

15. During all relevant time periods, Victim Y.P. resided in Connecticut and his place of business was also in Connecticut. On April 15, 2022, investigators interviewed Y.P. at his residence in Connecticut.

16. During the interview, Victim Y.P. learned that he was a victim of a scam. According to Victim Y.P., on or about December 22, 2020, he received a telephone call from an individual claiming to represent "Homeland Security." Victim Y.P. related that he hung up the telephone believing the caller to be a scammer. Shortly after, Victim Y.P. received a call from an individual claiming to be a representative of Victim Y.P.'s local police department; this individual

instructed him to speak to Homeland Security as the call was not a scam and Victim Y.P.'s identity had been compromised.

17. From that point on, until April 15, 2022, Victim Y.P. believed he was cooperating with the government in proving his own identity and assisting in the apprehension of the individuals using his identity. Over the duration of the scam, Victim Y.P. sent approximately $603,952.45 of his personal funds in cash packages and wires to various individuals and companies, both domestic and overseas. In total, however, Victim Y.P. sent approximately $5,409,837.19 to various individuals and companies, both domestic and overseas, most of which included money wired *into* Victim Y.P.'s bank account from other victims.

18. Victim Y.P. provided law enforcement with his cellphone containing communications with Parikh, who claimed to be "Deputy Secretary of US Treasury," and Wright, who claimed to be a representative of USCIS. Law enforcement conducted a review of the cellphone and noted the following telephonic exchanges.

19. On March 16, 2022, Victim Y.P. received a PDF file from the WhatsApp account of Parikh, purportedly from Parikh, containing a fabricated "grant approval" letter stating:

> Dear citizen [Y.P.]
>
> This letter is for your grant approval from US Treasury due to the total amount seize from Mohammad Amin has been collected in US Treasury , according to law we have to give you 19% grant of this amount which $4,783,655.46 USD since you are an victim of identity theft , we will release your funds and grant reward in your existing bank account, once you verify your fingerprints and biometrics in USCIS immigration office , we also thankyou that because of your case US Treasury benefitted in terms of money
>
> Thankyou
>
> Approved Grant  - $4,783,655.46 USD

        (United States Treasury Secretary)
        Janet Yellen

20.    On March 18, 2022, Victim Y.P. received a WhatsApp telephone call followed by an image purportedly from Parikh, via WhatsApp, showing the following information:

        BENEFICIARY ACCOUNT NAME – [Victim J.P.'s full name]

        BENEFICIARY BANK NAME – Chase Bank

        BENEFICIARY ADDRESS – [Home address Victim J.P.]

        BENEFICIARY ACCOUNT NUMBER – [Account number of Victim J.P.]

        BENEFICARY ROUTING – [Chase bank routing number]

21.    On the same date, Victim Y.P. received a verbal instruction from Parikh to wire the money to Victim J.P. and provide Parikh with a confirmation of the wire. Y.P. responded with an image containing a confirmation of domestic wire transfer request from his bank to Victim J.P. in the amount of $165,000.

22.    On the same date, Victim Y.P. received a PDF document from Parikh stating, in summary, that the transaction had been counted "as a bond in the US Treasury. The transaction is verified" and that "the verification purpose you made the payment in different government verified transaction facilities."

23.    On or about April 20, 2022, Victim S.P. reported to the Naperville Police Department in Naperville, Illinois that he and his wife J.P. had been the victims of a scam. Victim S.P. provided written correspondence sent by individuals purporting to be United States government officials, bank statements showing wire transfers to the Coinbase Account, and telephone numbers used by the purported government officials.

24. As set forth in more detail in the subparagraphs, law enforcement officials consequently reviewed documents provided by Victim S.P., conducted blockchain analysis, and communicated with Binance. Upon request, Binance provided information regarding the Binance Account, including "Know-Your-Customer" ("KYC")[2] information retained by the company on the accountholder. The KYC information, which consisted of contact information and an electronic copy of an Indian passport, identified the accountholder on the Binance Account as AHIR.

      a. On or about June 6, 2022, law enforcement requested the account information associated with transaction hashes 5c440544615874927d2861b98ee41eeee22bf2ad02f40ea44aa9f94fabf7a86d and a416c6d8331f8f18f8301ec22744c1091bd75df9ff590753fcb53f2b7f7220ba from Binance. On or about June 7, 2022, Binance supplied the account records for Binance User ID 147302327. According to Binance records, Binance User ID 147302327 was created on or about May 8, 2021 and is registered to SANJAY LALJIBHAI AHIR utilizing an email address of [REDACTED]@gmail.com and a Republic of India Identification card.

---

[2] KYC information refers to a due diligence standard in the financial services industry under which financial institutions collect detailed information about customers to mitigate the risk that customers will conduct illicit transactions through accounts at the institution and to identify transactions that may be related to money laundering and terrorism financing. KYC information frequently includes details regarding the customer's or beneficial owner's identity, demographic information (such as date and place of birth), and place and industry of business.

  b. As set forth more fully herein, *see* paragraph 45; blockchain analysis of the Binance user's account activity shows that the 1MuVK address and the bc1qaa address are both deposit addresses of AHIR's Binance account. Furthermore, the blockchain transactions traced by law enforcement and outlined in paragraph 45 were deposited into AHIR's Binance account.

25. Upon review of Victims S.P. and J.P.'s banking documents, law enforcement confirmed that S.P. and J.P. had received, and sent onward, funds from Victim Y.P., Victim S.K. (a victim debriefed by law enforcement who resides in Ohio), Victim R.S. (a victim debriefed by law enforcement who resides in California) and Victim G.P. (a victim debriefed by law enforcement who resides in Delaware). Some of these funds were routed to the defendant asset.

  **A.** **Transfer of S.P. and J.P.'s Funds to Subject Account**

26. On or about October 22, 2020, Victims S.P. and J.P. were contacted by telephone by an individual who identified himself as Jack Austin ("Austin") with the U.S. Treasury. As with the other individuals associated with the crime, Austin was not an actual employee or agent of the government. Austin advised S.P. there had been a cybersecurity breach at "Social Security" that put S.P. and J.P.'s personal information and finances at risk of theft. Austin claimed to be contacting citizens affected by the breach to protect their finances from theft. He also advised S.P. that the United States government was providing grant funding to certain citizens affected by the breach. S.P. agreed to join the Federal grant program and cooperate with Austin, and other agencies with their respective "officials" (including the fictitious Luke Wright and Eric Matthews), to assure the protection of his finances. To begin this process, Austin and Matthews requested that Victims S.P. and J.P. provide personal and financial information, including the locations of bank

accounts, and account numbers. Victim S.P. complied and provided information for financial accounts that he held jointly with Victim J.P. at Northern Trust and Chase Banks.

27. Over the course of the scheme, Victim S.P. received numerous faxes from Austin, and other agencies with their respective "officials," containing fraudulent documents. The documentation purported to issue from federal district courts, the United States Treasury, and the FBI and identified S.P. and J.P. by name.

28. For instance, on or about November 2, 2020, Victim S.P. received a fax addressed to him from the "U.S. Citizenship and Immigration Services." The fax contained a document purporting to be on letterhead from the FBI and reflecting the announcement of the United States District Court for the Southern District of California in a case involving Victims S.P. and J.P. The document described the court's sentence for a "convict" named "Ali Sheikh" for his role in a conspiracy to launder money by opening bank accounts using personal information belonging to Victims S.P. and J.P. The document listed several bank accounts that Sheikh confessed to opening using Victim S.P.'s information and noted that Sheikh also confessed to using S.P.'s identity in a false passport to visit Syria. The document was signed by "Eddie Garcia, Chief of Police" for the San Jose Police Department. The same fax to S.P. contained another document apparently signed by "Richard K. Delmar," the Acting Inspector General of the Department of the Treasury and purporting to act upon the judgment of the district court (as described immediately above) to "freeze and seize" the bank accounts that Sheikh confessed to opening using Victims S.P. and J.P.'s personal information.

29. Later, Austin and Matthews introduced an individual who identified himself as Dixit Patel, a supposed translator, to J.P. and S.P. Dixit contacted Victim S.P. to advise him to

create a Coinbase Account at Coinbase, Inc. ("Coinbase Account"), providing S.P. step-by-step instructions on how to do so. Dixit told Victim S.P. that he should transfer money from his Northern Trust Account and other accounts to the Coinbase Account. Victim S.P. understood this to be a necessary step to protect his financial assets and to receive the Federal grant funding.

30. On or about December 4, 2020, once Victim S.P.'s Coinbase account was created, Dixit told Victim S.P. that he needed his username and password. Once Dixit had Victim S.P.'s username and password he, or other individuals, would log in to the account and purchase large quantities of Bitcoin. The same pattern was repeated with Victim J.P.'s account. Dixit, or other individuals, then transferred the funds into other cryptocurrency addresses, two of which are administered by Binance. According to Binance records, both addresses are linked to the defendant asset in this case, the Binance Account controlled by AHIR.

31. On or about January 22, 2021, Victim S.P. received an additional fax purporting to be an "Approval of Government Grant" from the U.S. Department of the Treasury. The document advised S.P. that he had been "selected" for the grant program and that he would receive $822,409.56, which reflected a portion of the funds "recovered…from the convict." The document indicated that Victim S.P. would receive the funds once there was "approval of tax amount."

32. On or about March 11, 2021, Victim S.P. received a third fax purporting to be a "Summary and Conclusion" document from the U.S. Department of the Treasury regarding the theft of Victim S.P.'s personal and financial information. This fax purported to reference an announcement from the United States Attorney's Office for the Western District of Michigan relating to the sentencing of two defendants for their role in a money laundering conspiracy. The document, again signed by Acting Inspector General Delmar, detailed the conspiracy as involving

the use of Victims S.P. and J.P.'s personal information to open bank accounts and move funds through those accounts to assist in exporting goods to Russia. The document offered reassurances to Victim S.P. that delays in "clos[ing] [his] case file" were the result of uncooperative "fugitives" who had not provided information about Victim S.P.'s bank accounts that were involved in the fraud. The document requested that Victim S.P. provide updated financial account information to the Department of Treasury, and it noted that doing so would ensure that Victim S.P. would receive his "new Identities," new bank accounts, and "refund checks."

33. On or about March 18, 2021, Victim S.P. received an additional fax purporting to be signed by Acting Inspector General Delmar regarding a "Confirmation of Refund on Tax Liabilities." The document purported to advise Victim S.P. that the taxes he owed as a result of "verifying" certain investment accounts with the U.S. Department of Treasury would "be refunded back…at the end of the procedure along with the refund checks." This fax was intended to assure Victim S.P. that the tax liabilities he had incurred due to withdrawing funds from investment accounts at Matthews' urging would be reimbursed by the Federal government as part of the "grant program."

34. On or about July 16, 2021, Victim S.P. received a fax purporting to be from "Adam Miller" of the United States Department of Treasury advising him that he had been selected again to receive compensation under the Federal grant program.

35. On or about July 21, 2021, Victim S.P. received a fax purporting to be from "Eric Matthew" of USCIS advising him that $593,733 had been received and verified by the Treasury Department. The fax appeared to be a receipt that Victim S.P. was required to retain in his records in order to later receive a refund on the money he transferred to the government.

36. On or about August 27, 2021, Victim S.P. received another fax purporting to be from "Adam Miller" of the United States Department of Treasury advising him that he had been selected a third time to receive compensation under the Federal grant program.

37. On or about October 19, 2021, Victim S.P. received a fax purporting to be from "Eric Matthews" of USCIS advising him that $897,000 had been received and verified by the Treasury Department. The fax appeared to be a receipt that Victim S.P. was required to retain in his records in order to later receive a refund on the money he transferred to the government.

38. Beginning at least on or about March 23, 2021, and continuing until at least on or about March 22, 2022, Victim S.P. began transferring funds from his and J.P.'s Northern Trust and Chase Accounts to his and J.P.'s Coinbase Accounts. According to Victims S.P. and J.P.'s bank statements, between on or about March 23, 2021, and on or about March 22, 2022, Victims S.P. and J.P. made a total of approximately 29 wire transfers to the Coinbase Accounts for an approximate total sum of $6,083,733: $5,581,733 from the Northern Trust Account and $502,000 from the Chase Account.

39. After Victim S.P. transferred the funds to the Coinbase Accounts, he was unable to track their location and amount beyond the email he received as a confirmation of bitcoin sent.

40. Since making the transfers to the Coinbase Accounts, Victims S.P. and J.P. have not been able to track any of their funds, nor have they received any grant funding or compensation as promised by Austin and other individuals who communicated with Victim S.P. via fax and telephone, as discussed above.

41.     Based on law enforcement's review of the bank records, law enforcement determined the wire transfers made by Victims S.P. and J.P. discussed above were made using the Fedwire system and traveled interstate.[3]

### B.     Transfer of Other Funds Through S.P. and J.P.'s Funds to Subject Account

42.     A review of Victims S.P. and J.P.'s bank accounts revealed that, beginning on or about May 10, 2021, large wire transfers were made *into* Victims S.P. and J.P.'s Northern Trust account from the accounts belonging to other individuals unknown to S.P. and J.P.  Victims S.P. and J.P's Northern Trust account bank records identify several of those individuals by name.

43.     Victim S.P. believed that the incoming wire transfers contained the names of other individuals because they were Federal grants being paid to him after being recouped from scammers using his identity.  As the wire transfers came in, the conspirators contacted Victim S.P. each time to instruct him to wire certain amounts to the Coinbase Account.

### Tracing Of Fraud Proceeds Into Subject Account

44.     Victim S.P. provided law enforcement with email receipts from his Gmail account reflecting 17 cryptocurrency transactions from his Coinbase Account to other cryptocurrency addresses.  Those receipts contained the dates of transaction and the amount of currency transferred from Victim S.P.'s Coinbase Account to other cryptocurrency addresses.  The dates of these transfers were from March 30, 2021, through January 10, 2022.

45.     Law enforcement conducted blockchain analysis on these transactions.  By way of example:

---

[3] Fedwire Funds Service is an electronic funds-transfer service operated by the United States Federal Reserve Banks and used by financial institutions use to send and receive payments on behalf of account holders.

a. Based on Victim S.P.'s Coinbase transactions, on or about July 1, 2021, S.P. sent approximately 22.29829435 BTC from S.P.'s Coinbase account to the Bitcoin address of 16VFYs6dVr3345v55FSy8u3DxFUWRoW5Xw (herein referred to as '16VFY') which is recorded on the Bitcoin blockchain with transaction hash 08e5091bbb7f17b8551ab5f63e367bd77dea93e41319cee79e3671c6aaf622ac. Based on analysis performed by law enforcement, the 16VFY address is not associated with a cryptocurrency exchange or service provider.  Continuing on or about July 9, 2021, the 16VFY address sent approximately 22.29829435 BTC to the Bitcoin address of 1MuVKVCrmT9E5Ms6XjFjKz6oTpdcQc6TZQ (herein referred to as '1MuVK') which is recorded on the Bitcoin blockchain with transaction hash 5c440544615874927d2861b98ee41eeee22bf2ad02f40ea44aa9f94fabf7a86d. Based on analysis performed by law enforcement the '1MuVK' address is associated with the international cryptocurrency exchange Binance.

b. Based on Victim S.P.'s Coinbase transactions, on or about October 12, 2021, S.P. sent approximately 6.13804646 BTC from S.P.'s Coinbase account to the Bitcoin address of bc1qd63xg30nzgqke26s8dle60jeec3u63vk8zf2mr (herein referred to as the bc1qd6 address) which is recorded on the Bitcoin blockchain with transaction hash 964ea1fc9316baa6d8c387664c10e7b0cc87777be09db341a6a1a72d2a6bd146 . Based on analysis performed by law enforcement, the bc1qd6 address is not

associated with a cryptocurrency exchange or service provider. Continuing on or about October 13, 2021, the bc1qd6 address sent approximately 6.13802958 BTC to the Bitcoin address of bc1qaadtkrjnhgcxluc2zvg56dg45aw7a67mu4ul83 (herein referred to as the bc1qaa address) which is recorded on the Bitcoin blockchain with transaction hash a416c6d8331f8f18f8301ec22744c1091bd75df9ff590753fcb53f2b7f7220ba. Based on analysis performed by law enforcement the bc1qaa address is associated with the international cryptocurrency exchange Binance.

46. Based a review of the Gmail receipts provided by Victim S.P., law enforcement identified that approximately $5,300,000 was transferred from his Coinbase Account to other cryptocurrency addresses. As noted above, S.P. was unable to track the funds once they were transferred from his Coinbase Account.

47. Based on a review of Victim S.P.'s Coinbase account, law enforcement identified additional cryptocurrency transactions for which S.P. did not have a Gmail receipt. The additional transactions totaled approximately $625,000 and were from his Coinbase Account to other cryptocurrency addresses. These transfers took place between approximately March 24, 2021, and December 22, 2021. Law enforcement conducted blockchain analysis on these transactions.

48. Based on a review of Victim J.P.'s Coinbase account, law enforcement identified additional cryptocurrency transactions for which neither S.P. nor J.P. had a Gmail receipt. The additional transactions totaled approximately $490,000 and were from Victims S.P. and J.P.'s Coinbase Accounts to other cryptocurrency addresses. These transfers took place between

approximately December 16, 2021, through March 23, 2022. Law enforcement conducted blockchain analysis on these transactions.

49. Based on the blockchain analysis, law enforcement determined that the majority of the funds moved from S.P.'s Coinbase Account were moved to two ultimate cryptocurrency addresses:

    a. 1MuVKVCrmT9E5Ms6XjFjKz6oTpdcQc6TZQ and

    b. bc1qaadtkrjnhgcxluc2zvg56dg45aw7a67mu4ul83.

50. Both cryptocurrency addresses were associated with the cryptocurrency exchange Binance.

51. On June 7, 2022, law enforcement contacted Binance to request user information regarding the cryptocurrency addresses listed above. A Binance representative indicated that both addresses were associated with a single user. On June 21, 2022, Binance produced account documentation, including an electronic image of an Indian passport, that indicated that AHIR is the account owner of the defendant asset. The same documentation identified information about the assets contained within AHIR's account–namely that, *inter alia*, it contained 150.89193753 Bitcoins.

52. On August 27, 2022, law enforcement executed a Federal Seizure Warrant for the Contents of the Binance Account associated with user ID 147302327 and registered to Sanjay Laljibhai Ahir and the account.

## CONCLUSION

53. Based upon the information set forth above, there is probable cause to believe that the Contents of the Binance Account associated with user ID 147302327 and registered to Sanjay Laljibhai Ahir constitutes traceable proceeds of a wire fraud scheme, in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 1956 that are subject to forfeiture under 18 U.S.C. § 981(a)(1)(A) via 18 U.S.C. § 1956(c)(7)(A) (defining specified unlawful activities to include offenses listed in 18 U.S.C. § 1961(1)) and 18 U.S.C. § 1961(1) (covering 18 U.S.C. § 1343), and 18 U.S.C. § 981(a)(1)(D).

Wherefore, the United States of America prays that a Warrant of Arrest In Rem be issued for is the Contents of the Binance Account associated with user ID 147302327 and registered to Sanjay Laljibhai Ahir; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the property to be condemned and forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

VANESSA ROBERTS AVERY,
UNITED STATES ATTORNEY

By:   /S/ David C. Nelson
      David C. Nelson (ct25640)
      Assistant U.S. Attorney
      157 Church Street, 24th Floor
      New Haven, Connecticut 06510
      Tel:   (203) 821-3700
      Fax:   (203) 773-5373
      David.C.Nelson@usdoj.gov

**DECLARATION**

I am a Special Agent with the Federal Bureau of Investigation, United States Department of Justice, and the individual assigned the responsibility for this case.

I have read the contents of the foregoing Verified Complaint of Forfeiture and the statements contained therein are true to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 19th day of October, 2022.


/s/ *Marie Gleyzer*
MARIE GLEYZER
SPECIAL AGENT, FBI